QUINN EMANUEL URQUHART & SULLIVAN, LLP
David M. Grable (Bar No. 237765)
  davegrable@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant StubHub, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CALENDAR RESEARCH LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL HUNTER GRAY, an individual; STUBHUB, INC., a Delaware corporation; EBAY INC., a Delaware corporation; LISA DUSSEAULT, an individual; LASHA EFREMIDZE an individual; and DOES 5 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-04062-SVW-SS<br><br>**DEFENDANT STUBHUB, INC.'S STATUS REPORT REGARDING THE COURT'S AUGUST 14, 2017 MINUTE ORDER**<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A (First Street) |

## BACKGROUND

Defendant StubHub, Inc. ("StubHub") respectfully submits this status report regarding the parties' meet and confer on the source code review in this case. On August 14, 2017, the Court issued an Order that stayed all claims except for the Defend Trade Secrets Act claim against StubHub, and directed the parties to (1) meet and confer within one week about the code review; (2) exchange expert reports within thirty days, by September 13, 2017; (3) conduct expert depositions by October 13, 2017; and (4) file motions for summary judgment by November 27, 2017. *See* Dkt. 46.

The parties have met and conferred over the past several days. On Thursday, August 17, 2017, Plaintiff sent StubHub a proposed stipulation seeking to alter the Court-ordered schedule for the source code review, to give the experts 60 days, rather than 30 days, to complete the review, and delay the source code exchange to August 30, 2017. *See* Benson Decl. Ex. 1. On Saturday, August 19, the parties engaged in a telephonic meet and confer, during which StubHub (1) stated that the Court-ordered 30 day expert code review period should not be extended to a longer period; and (2) explained some protective features that the code review will need to have, features that are regularly used in code reviews like this – such as a "clean room" procedure. *See id*. ¶ 4.

On Monday, August 21, StubHub provided Plaintiff with a draft Protective Order (the "Draft PO") modeled on model protective orders from the Northern District of California, the Eastern District of Texas, and protective orders used in other cases involving code review. *See id*. ¶ 5, Exs. 2 and 3. The Draft PO contained standard features for code reviews in cases like this – such as a clean room process, restrictions on printing source code, and a prohibition for individuals who review the source code on prosecuting patents of similar subject matter for a period of time after the review. *See id*. Since that time, the Parties have met and

conferred multiple times by email and telephonic conferences, to try to find common ground on issues. *See id.* ¶ 7.

Although the meet and confer appears to have allowed the parties to hammer out some issues, there are some issues on which the parties have not been able to reach agreement, specifically: (1) the location of the source code review for Plaintiff's expert; (2) the amount of time the experts should have to initially review the code and prepare their reports; and (3) some miscellaneous features of a protective order for this matter.

To avoid further delay of the source code review, StubHub respectfully requests that the Court resolve three issues for which the parties have reached impasse and enter the proposed Protective Order attached to this Status Report.[1]

## ANALYSIS

### I. REVIEW OF STUBHUB'S SOURCE CODE SHOULD TAKE PLACE IN A CLEAN ROOM CONTROLLED BY STUBHUB

A principal area of disagreement for the parties is the location where Plaintiff's expert should be permitted to review the source code.

By way of background, the source code for the StubHub mobile phone application is highly confidential, proprietary, trade secret information. *See* Dehdashtinejad Decl. ¶¶ 2–3. StubHub has expended significant resources to maintain the secrecy of that code, which provides StubHub with a competitive advantage. *See id.* ¶ 3. If that code were to fall into the hands of a competitor, a third party, or the public, it would likely result in devastating competitive harm to StubHub. *See id.* ¶ 4.

---

[1] The proposed Protective Order attached to this Status Report is substantively identical to the most recent draft Stipulated Protective Order that StubHub proposed to Plaintiff. *See* Benson Decl. Ex. 9.

Given these sensitivities and risks, StubHub asked Plaintiff to agree to a review in a "clean room" setup, where the source code for both applications is loaded onto a computer, and housed in a secure room at the offices of StubHub's counsel. *See* Benson Decl. Ex. 3, at § 6.  Such a review is normal in cases such as this, where sensitive, trade secret, highly valuable code is involved.  For example, the Northern District of California's model protective order for patent cases provides, as a default, for code review to occur at the office of the producing party, providing that source code should be made available "***at an office of the Producing Party's counsel*** or another mutually agreed upon location" (emphasis added).[2]  The Eastern District of Texas's model protective order for patent cases provides that the producing party's outside counsel's office shall be the ***sole*** location for source code computers.[3]  The same provision is found in a standing protective order within this district.  *See Aerospace Devices, Inc. v. SACS GmbH*, No. 8:16-1157-AG-PJW, 2016 WL 4925907, at *3 (C.D. Cal. Sept. 14, 2016).

The regular use of this type of procedure is understandable, given the high value and critical role that source code has for a tech company such as StubHub. *See, e.g., Adobe Sys., Inc. v. Macromedia Inc.,* No. 00-743, 2001 WL 1414843, at *1 (D. Del. Nov. 5, 2001) ( a company's source code is "of critical importance to its business and must be provided the highest form of protection a court can provide in the context of a particular case").

And such a procedure is warranted in a context such as this even though it imposes some "burden" on Plaintiff.  Courts recognize that such burden is unavoidable, but warranted, in the context of review of highly proprietary, valuable code.  *See, e.g.*, *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 11-5973, 2012

---

[2] Available at http://www.cand.uscourts.gov/model-protective-orders.
[3] Available at http://www.txed.uscourts.gov/?q=judge/district-judge-rodney-gilstrap.

WL 1232105, at *3 (N.D. Cal. Apr. 12, 2012) ("[The plaintiff] may have shown that it will be more difficult to manage the case if it must review source code at opposing counsel's offices or another agreed upon location, however, the court is not convinced that this would significantly prejudice [the plaintiffs] presentation [of its case]. The court cannot help but observe that in many other patent cases ... the parties have stipulated to the Model Protective Order without suffering prejudice.").

Further, StubHub has endeavored to make significant accommodations for Plaintiff to reduce such burden. For example, StubHub originally desired to have the clean room housed at the offices of Quinn Emanuel in California. *See* Benson Decl. Ex. 3, at § 6(a). After learning that Plaintiff's chosen expert is located in Boston, StubHub made arrangements to have another law firm that represents StubHub, with offices in Boston, host the clean room in Boston. *See id.* Ex. 4.

Plaintiff has instead proposed that the review occur at the offices of its expert in Boston. *See id.* Ex. 5. But such a procedure would significantly deviate from the norm for cases such as this. Indeed, a "clean room" housed in the offices of the expert being paid by your adversary is not a "clean room" at all. It is instead a situation where the party needing monitoring is monitoring itself. Such a procedure would provide nothing close to the kind of protection or comfort that an ordinary clean room procedure – housed at the law offices of a firm representing StubHub – would provide. StubHub thus respectfully requests that the Court order a clean room review housed at the offices of StubHub's counsel, as set forth in the Draft PO. *See id.* Ex. 3, at § 6.

## II. THE CLEAN ROOM CONDITIONS PROPOSED BY STUBHUB ARE LIKEWISE STANDARD AND REASONABLE

Just as the clean room is, itself, a standard feature in a protective order governing source code review, specific conditions associated with the clean room that StubHub has proposed in the Draft PO are also standard, necessary and reasonable.

Plaintiff and StubHub have met and conferred on other terms of a protective order, and have not yet reached agreement on all terms. Attached as Exhibit 9 to the Benson Declaration is a draft of the protective order that StubHub would agree to in this case, which is revised from the latest draft that Plaintiff provided to StubHub early this morning in negotiations (the "Most Recent Draft PO"). Attached as Exhibit 8 to the Benson Declaration is a redline version showing the edits StubHub has made to the last draft protective order Plaintiff proposed this morning.

The features StubHub is seeking for this code review – as reflected in the Most Recent Draft PO – are not unusual in cases such as this. For example, StubHub proposes limiting the parties to a single standalone computer, instead of the three computers Plaintiff seeks. *See* Benson Decl. Ex. 8, at § 9(b). The Northern District of California's model protective order for patent cases likewise provides for "*a* secured computer in a secured room."[4] StubHub also proposes that any printout of source code be made on consecutively Bates numbered paper. *See* Benson Decl. Ex. 8, at § 9(c)(iii). Judge Guilford's standing protective order, in this district, has the same requirement. *See Aerospace Devices, Inc.*, 2016 WL 4925907, at *3. StubHub's proposal that reviewers must log the time they begin and end each source code review session is not unusual. *See* Benson Decl. Ex. 8, at § 9(b). Here again, the Northern District of California's model protective order recognizes "[i]t may be appropriate under certain circumstances to require the Receiving Party to keep a paper log indicating the names of any individuals inspecting the source code and dates and times of inspection."[5] Given how valuable StubHub's source code is and the lengths it has gone to protect the secrecy of the code, such logging is appropriate in this case. *See generally* Dehdashtinejad Decl. Finally, StubHub's proposed bar on source code reviewers developing applications that are similar to

---

[4] Available at http://www.cand.uscourts.gov/model-protective-orders

StubHub's application is another protection commonly found in source code protective orders. *See, e.g.*, *Adaptlx, Inc. v. Dell, Inc.*, No. 5:14-1259, 2015 WL 12839125, at *11 (N.D. Cal. Sept. 8, 2015), *Pragmatus AV, LLC v. Citrix Sys., Inc.*, No. 11-62484, 2012 WL 12094515, at *5 (S.D. Fla. July 18, 2012).

StubHub respectfully requests that the Court enter the Proposed Protective Order (which mirrors the Most Recent Draft PO) to govern the code review in this case.[6]

## III. THE THIRTY DAY CODE REVIEW PERIOD ORDERED BY THE COURT SHOULD NOT BE EXTENDED

This Court entered an Order at the August 14 hearing establishing no more than thirty days for the parties' experts to review source code and generate an expert report. Plaintiff did not object to that timeline at the hearing. To the contrary, at the August 14 hearing, Plaintiff represented to the Court that it was "ready to [perform as source code comparison] as soon as . . . asked," suggesting that it believed the results of the comparison would provide it a shot at summary judgment. Aug. 14, 2017 Hr. Tr. at 7:11–8:21.

Plaintiff now seeks to triple the time its expert will have to review StubHub's source code, saying that it will need 90 days to conduct a code review at a clean room location in Boston. *See* Benson Decl. Ex. 5. Respectfully, the Court should not alter the 30-day period for code review and drafting of initial expert reports, for multiple reasons.

---

[5] Available at http://www.cand.uscourts.gov/model-protective-orders.
[6] The only differences between the Most Recent Draft PO and the Proposed Protective Order are the law firm that appears on the title page was changed to Quinn Emanuel, the title of the document was changed to substitute "Proposed" for "Stipulated," all references to the Protective Order being stipulated or agreed to were struck, the signature block at the end of the Order was changed, and the words, "It is so ordered," were added immediately before that final signature block.

*First*, a meaningful and effective review can be conducted in 30 days. As set forth in the attached declaration from StubHub's code review expert, Dr. Cynthia Lee, an expert should be able to complete a review of the StubHub and Klutch app codes to determine whether the latter was improperly used to create code for the former in a 30 day period. *See* Lee Decl. ¶ 4.

*Second*, this is not a code review Plaintiff has portrayed, to this point, as one where Plaintiff needs to find a "needle in a haystack." Plaintiff avoided a motion to dismiss by alleging in the Third Amended Complaint, and arguing at the motion to dismiss phase, that features of the StubHub app are "remarkably similar" to features of the Klutch app. *See* Third Amended Complaint (Dkt. 40-10) ¶ 115. Plaintiff should be able to focus on the code related to these features, and quickly and easily establish copying, if Plaintiff's allegations and arguments have any merit. A meaningful review that checks the code for those features, and also examines other portions of the code for similarities, can be completed within 30 days. *See* Lee Decl. ¶ 4.

*Third*, allowing Plaintiff 90 days to conduct the code review is effectively countenancing the kind of fishing expedition that courts have recognized should not occur in cases like this:

> Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.

*Jobscience, Inc. v. CVPartners, Inc.*, No. 13-4519, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014). Here, Plaintiff pointed out particular features it says show trade secret misappropriation. It should be able to conduct a review of the code within

thirty days, and test its theory as to those features much more quickly. *See* Lee Decl. ¶ 4.

***Fourth***, if Plaintiff's expert truly believes he cannot conduct a review within the period ordered by the Court, the solution is not to seek to expand the time period set by the Court; the solution is for Plaintiff to find an expert who can meet the timeline that has been set – as StubHub did.[7]

## CONCLUSION

Respectfully, StubHub submits that the Court should (1) enter the Proposed Protective Order to govern the code review: (2) direct that the parties provide source code to be reviewed pursuant to those terms on a schedule akin to what the Court previously ordered, for example:

- the Parties provide source code for review in the clean room setup no later than Thursday, August 31;
- the Parties' experts complete their reviews and exchange reports by Monday, October 2;
- the Parties' experts sit for deposition by Wednesday, November 1; and
- summary judgment briefing be submitted no later than Friday, December 15.

---

[7] Plaintiff informed StubHub that it will seek to disqualify StubHub's expert. StubHub vigorously disagrees with Plaintiff's proffered basis for doing so, sees this as yet another effort by Plaintiff to slow down this code review process, and will respond more fully if and when Plaintiff undertakes such effort.

DATED: August 24, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ David M. Grable*
David M. Grable
Attorneys for Defendants StubHub, Inc.