1    **Pierce Bainbridge Beck Price & Hecht LLP**

2    John M. Pierce (SBN 250443)
3    jpierce@piercebainbridge.com
     600 Wilshire Blvd., Suite 500
4    Los Angeles, CA 90017
5    (213) 262-9333

6    Douglas S. Curran *(pro hac vice)*
7    dcurran@piercebainbridge.com
     Conor McDonough *(pro hac vice)*
8    cmcdonough@piercebainbridge.com
9    20 West 23rd St., 5th Floor
     New York, NY 10010
10   (213) 262-9333

11
     *Attorneys for Plaintiff*
12   *Calendar Research LLC*

13

14              THE UNITED STATES DISTRICT COURT
15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

17   **Calendar Research LLC,**          Case No. 2:17–cv–04062–SVW–SS
                                         Hon. Stephen V. Wilson
18            Plaintiff,

19        v.                             **Plaintiff's Supplemental Memorandum**
                                         **in Advance of October 1, 2018 Hearing**
20   **Michael Hunter Gray**, *et al.*,

21            Defendants.

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     PROCEDURAL HISTORY ............................................................................1

       A.     State Court Proceedings and Removal ......................................1

       B.     Motions to Dismiss and the August 14, 2017 Hearing ..........................2

       C.     Limited Discovery on StubHub's Alleged Copying of
              Plaintiff's Source Code ..............................................................4

       D.     Summary Judgment on StubHub's Alleged Copying of
              Plaintiff's Source Code ..............................................................5

II.    REQUESTED CLARIFICATION OF THE AUGUST 7, 2018
       SUMMARY JUDGMENT ORDER ..........................................................5

III.   DISCOVERY ON REMAINING CLAIMS ..........................................9

       A.     The Stay Should Be Lifted on All Remaining Claims ......................10

       B.     Plaintiff Should Be Permitted to Amend Its CFAA Claim. ...............11

       C.     Discovery on Remaining Federal Claims ..........................................12

              1.     Remaining DTSA Claims ..........................................12

              2.     CFAA Claims .........................................................18

IV.    CONCLUSION ...................................................................................21

# TABLE OF AUTHORITIES

## **Cases**

*Dependable Hwy. Exp., Inc. v. Navigators Ins. Co.*
 498 F.3d 1059 (9th Cir. 2007)........................................................................10

*Foman v. Davis*
 371 U.S. 178 (1962) ....................................................................................11

*Lockyer v. Mirant Corp.*
 398 F.3d 1098 (9th Cir. 2005)....................................................................10

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*
 281 F. Supp. 3d 1021 (S.D. Cal. 2017) ......................................................16

## **Statutes**

18 U.S.C. § 1030............................................................................1, 18, 19

18 U.S.C. § 1831............................................................................................9

18 U.S.C. § 1836............................................................................1, 13, 15

18 U.S.C. § 1839............................................................................2, 6, 13

## **Federal Rules**

Fed. R. Civ. P. 15........................................................................................12

## **Other Authorities**

Melvin F. Jager, 1 Trade Secrets Law (2006) ..........................................17

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

Plaintiff Calendar Research LLC respectfully submits this memorandum pursuant to the Court's August 7, 2018 Order (the "MSJ Order," Dkt. 160). This memorandum first sets forth the procedural history of the case in order to precisely identify the claims on which discovery has been taken and the Court has ruled. It then seeks clarification of the MSJ Order with respect to certain ambiguities, in order to establish which claims remain and are now ripe for discovery. Finally, it requests that the Court lift the stay on all remaining claims, and lays out the scope of proposed discovery on the remaining federal claims.

## I.  PROCEDURAL HISTORY

### A.  State Court Proceedings and Removal

This case was filed on November 11, 2015 in California Superior Court alleging conversion, breach of contract, intentional interference with prospective economic advantage, promissory fraud, and misappropriation of trade secrets. (Dkt. 1-1 at 1). Plaintiff filed first and second amended complaints in 2015 and 2016. (*Id.* at 82; Dkt. 1-3 at 1). In 2017, Plaintiff sought leave to file a third amended complaint ("TAC"), which added as defendants StubHub, eBay, Lisa Dusseault, and Lasha Efremidze, and also added claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. (Dkt. 1-5). The state court granted leave to amend, and, because of the federal claims, defendants removed the case to this Court in May 2017. (*See* Dkt. 1 at ¶ 4).

**B.      Motions to Dismiss and the August 14, 2017 Hearing**

Defendants Gray, Dusseault, StubHub, and eBay filed motions to dismiss the TAC in July 2017. (Dkts. 32, 33, 34). The Court held a hearing on these motions in August 2017, which it converted into "something of a status conference," and stated that it would like "to focus initially on the two federal claims—the computer fraud statute, and the trade secret statute," namely, Plaintiff's claims under the CFAA and the DTSA. (Aug. 14, 2017 Tr. at 4).

The Court then turned to the "use" prong of Plaintiff's misappropriation claim under the DTSA,[1] asking Plaintiff's counsel, "And what is your evidence at this point that StubHub is <u>using</u> all [or] a part of the [Calaborate] program?" (*Id.* at 6 (emphasis added)). Plaintiff's counsel responded that, with respect to this "use" type of misappropriation, "[t]he principal evidence will be the source code that underlies the StubHub application." (*Id.*). The Court observed that "if there is undisputed evidence about the fact that the StubHub software has integrated [Calaborate's] software[,] and given the background of the movement of the [Calaborate] people to StubHub, you would have a shot at summary judgment." (*Id.* at 8).

On these grounds, the Court authorized discovery limited solely to the question of whether StubHub had copied Plaintiff's code in programming its own applications. The Court stated that "[t]he plaintiff is of the view that it will be able to do the code

---

[1]      As the Court has noted, "misappropriation" under the DTSA can take the form of improper acquisition, disclosure, or use of another's trade secrets. (18 U.S.C. § 1839; MSJ Order at 5; *infra* at 13).

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

review and offer evidence sufficient to make a viable summary judgment motion," and that the parties should exchange source code, engage in expert discovery regarding that code, and then move for summary judgment. If fact issues remained thereafter, the Court envisioned "hav[ing] a quick trial on this code." (*Id.* at 10–13). The Court then set deadlines for the source-code-related discovery. (*Id.* at 13).

Crucially, the discussion of Plaintiff's DTSA claims at this hearing was limited to only StubHub's use of the source code through its alleged copying; the Court did not address other types of wrongful "use" under the DTSA, nor did it address either the "acquisition" or "disclosure" prongs of the DTSA, violations of which Plaintiff has also alleged. And it likewise did not consider Plaintiff's DTSA claims against the defendants other than StubHub. The discovery that the Court ordered was similarly restricted to the question of whether StubHub had used Plaintiff's source code in its own programming by copying the code.

Following the hearing, the Court issued an order memorializing the anticipated exchange of source code and related expert discovery. (Dkt. 46). That order stated, "All matters are stayed except for the [DTSA] claim against StubHub." (*Id.* at 1). But, given that discovery was limited to solely the source-code-copying allegations of the DTSA claim against StubHub, the stay also applied, de facto, to the allegations of Plaintiff's DTSA claims that did not relate to StubHub's copying of source code.

On August 16, 2017, the Court granted in part and denied in part the motions to dismiss. ("MTD Order," Dkt. 47). The Court, *inter alia*, (i) dismissed the claims against

eBay, with leave to amend (*id.* at 3); (ii) dismissed the claims for conversion, claim and delivery, and receipt of stolen property, as preempted by the California Uniform Trade Secrets Act ("CUTSA") (*id.* at 7–8); (iii) ruled that the claims asserted under contract theories, promissory fraud, and the CFAA were not preempted by CUTSA (*id.* at 9–10); (iv) found that Plaintiff had adequately pled claims for trade secret misappropriation against Gray, Dusseault, and StubHub under CUTSA and the DTSA (*id.* at 5–7); (v) ruled that Plaintiff had "alleged specific trade secrets in a detailed description" (*id.* at 4); (vi) ruled that Plaintiff had "adequate[ly] ple[d] that Defendant[] StubHub knew or should have known that the individual defendants had stolen [Plaintiff's] trade secrets" (*id.* at 6); and (vii) rejected defendants' argument that prior public disclosure of the source code by one of the defendants rendered the code unprotectable (*id.* at 5).

Plaintiff then filed a Fourth Amended Complaint ("4AC," Dkt. 57) on August 30, 2017, which, *inter alia*, addressed deficiencies identified by the Court's MTD Order.

## C. Limited Discovery on StubHub's Alleged Copying of Plaintiff's Source Code

Following the August 14, 2017 hearing, the parties went forward with discovery limited to the narrow question of whether StubHub had copied—either verbatim or otherwise—Plaintiff's source code in its programming. The parties were not permitted to engage in discovery to support any other of their claims or defenses. The parties exchanged proposals for source-code review (Dkt. 51 at 4), the Court modified the discovery schedule (Dkt. 55), StubHub's initial expert was disqualified (Dkt. 69),

1  Plaintiff filed and prevailed on a motion to compel (Dkts. 75, 116), and the parties

2  exchanged expert reports and conducted expert depositions by December 2017.

3
4
**D.      Summary Judgment on StubHub's Alleged Copying of Plaintiff's Source Code**

5
6  On February 20, 2018, StubHub filed a motion for summary judgment on

7  Plaintiff's claim that StubHub had copied Plaintiff's source code in its programming.

8  (Dkt. 138). StubHub asserted that, based on a comparison of the parties' source code,

9
10 there was no evidence that Plaintiff's code was used to create any of StubHub's

11 applications. (Dkt. 138 at 6). Plaintiff opposed StubHub's motion, and emphasized that

12 (i) the motion was directed only to the use of Plaintiff's code in StubHub's applications;

13
14 and (ii) Plaintiff's other misappropriation claims—i.e., those that are separate from

15 StubHub's alleged copying of its source code—did not depend on the outcome of that

16 motion. (Dkt. 141 at 1–3).

17
18 On August 7, 2018, the Court granted StubHub's motion and ordered the parties

19 to file supplemental memoranda on the remaining federal claims. (MSJ Order at 17).

20 **II.    REQUESTED CLARIFICATION OF THE AUGUST 7, 2018 SUMMARY JUDGMENT ORDER**

21
22 The MSJ Order contains certain ambiguities and inconsistencies about which

23 Plaintiff now respectfully seeks clarification, in order to precisely identify the contours

24
25 of the remaining dispute.

26 *First,* in identifying the scope of the Court's summary judgment ruling, the Order

27 states, "At the motion to dismiss stage, the Court stayed all claims except for the

28

[DTSA] claims against StubHub. The Court ordered discovery related to that claim and ordered Defendant StubHub to file a motion for summary judgment." (MSJ Order at 3 (emphasis added)). The Order then states that it "GRANTS Defendant StubHub's motion for summary judgment on the DTSA claim," and directs the parties to address the other remaining federal claims, suggesting that all DTSA claims have been resolved. (*Id.* at 17 (emphasis added)). These statements are inconsistent with the Court's prior rulings, the scope of discovery, and Plaintiffs' allegations.

As set forth in Part I.B. above, at the August 14, 2017 hearing, the Court ruled that the parties were to engage in discovery and summary judgment briefing with respect to just one of Plaintiff's DTSA claims—namely, that StubHub had copied Plaintiff's source code in violation of the "use" type of "misappropriation" under the DTSA. *See* 18 U.S.C. § 1839(5). The subsequent discovery and expert analysis was limited to that narrow question, as the Court directed. The parties did not take any discovery regarding other types of misappropriation that are likewise prohibited by the DTSA, including whether StubHub (i) "used" Plaintiff's trade secrets in a manner other than by using Plaintiff's source code in its own programming; (ii) wrongly "acquired" Plaintiff's trade secrets in the first place, even if it did not otherwise "use" them; and (iii) wrongly disclosed Plaintiff's trade secrets, even if it did not otherwise "use" them.

Each of these types of misappropriation is supported by the allegations in the Complaint, and Plaintiff has not yet had an opportunity to pursue discovery on them. Indeed, the MSJ Order itself recognizes that evidence of other types of misappropriation

by StubHub were not relevant to the summary judgment motion that was before the Court. For instance, the Court set aside certain evidence of defendants' improper <u>acquisition</u> of Plaintiff's trade secrets as "irrelevant to this Court's analysis on this particular motion" because that acquisition-related evidence did not affect the Court's conclusion that "StubHub did not <u>use</u> any of the Klutch code in the actual application." (MSJ Order at 16 (emphasis added)).

It is axiomatic that a Court should not grant summary judgment on valid claims—which have survived a motion to dismiss—without first permitting discovery and briefing on them. Plaintiff therefore respectfully requests clarification that (a) the MSJ Order granted summary judgment only with respect to the question of whether StubHub violated the DTSA by copying Plaintiff's source code in its own programming, and (b) Plaintiff's other DTSA allegations against StubHub remain in the case.

**Second,** Plaintiff asserts its claims for trade-secret misappropriation under the DTSA not just against StubHub, but also against eBay, Gray, Dusseault, and Fremidze. (*See* 4AC ¶¶ 121–31). Thus, even if the MSJ Order *had* entirely disposed of the DTSA claim against StubHub—and it did not—that Order had no bearing on Plaintiff's DTSA claims against the other defendants. Plaintiff therefore respectfully requests clarification that the MSJ Order did not dispose of DTSA claims against any defendants other than StubHub.

**Third,** in the final portion of the MSJ Order's "Analysis" section, the Court briefly addresses whether Plaintiffs have identified evidence regarding StubHub's

– 7 –

"mental state," because, the Court ruled, each of the three types of misappropriation under the DTSA "requires a showing that the defendant had knowledge." (MSJ Order at 17). The Order then concludes that the "Court lacks any evidence to make a finding that StubHub acquired, disclosed, or used Plaintiff's trade secrets with knowledge," such that "[t]he lack of knowledge provides the Court with a second ground for summary judgment." (*Id.*). But, as with the other issues that fall outside of the narrow discovery authorized by the Court, Plaintiff did not have an opportunity to conduct discovery of StubHub's knowledge in connection with types of misappropriation beyond the alleged copying of the code.

Indeed, in the August 2017 MTD Order, the Court expressly addressed the question of StubHub's knowledge in connection with the improper <u>acquisition</u> type of misappropriation, ruling that Plaintiff had "adequate[ly] ple[d] that Defendant[] StubHub knew or should have known that the individual defendants had stolen [Plaintiff's] trade secrets." (MTD Order at 6). The Court then enumerated specific allegations in the complaint regarding StubHub's knowledge that the trade secrets had been wrongly acquired, concluding, "It is unclear what more Plaintiff could allege" without the benefit of discovery. (*Id.*). That discovery has yet to take place.

Plaintiff therefore respectfully seeks clarification that the discussion of the lack of evidence of StubHub's knowledge (a) is limited to the narrow question of whether StubHub knew that it had copied Plaintiff's source code in its own programming— which was the only type of misappropriation at issue on summary judgment—and

– 8 –

(b) does not bear on whether StubHub (or any other defendant) had knowledge of the other alleged types of misappropriation.

*Finally,* in the last paragraph of the MSJ Order, the Court states that it grants StubHub's motion for summary judgment "on the DTSA claim," that it "lifts the stay on the CFAA and EEA claims," and that the parties must "file supplemental memoranda on the EEA and CFAA claims." (MSJ Order at 17). This paragraph might be read as suggesting that Plaintiff's DTSA claims and EEA claims are distinct from one another, and that the DTSA claims have been dismissed, while the EEA claims remain. This is not the case, as the DTSA and EEA claims are one and the same.[2]  Plaintiff therefore understands that the Court has ordered the parties to submit supplemental memoranda addressing Plaintiff's remaining federal claims—namely, the remaining DTSA claims and the CFAA claims—but respectfully requests clarification on this point as well.

## III.   DISCOVERY ON REMAINING CLAIMS

With respect to discovery on the remaining claims, Plaintiff respectfully submits that (i) for the sake of efficiency and fairness, the stay should be lifted on all other claims that have not been dismissed; (ii) Plaintiff should be permitted to amend its CFAA claim to include Dusseault, Efremidze, StubHub, and eBay as additional defendants; and (iii) Plaintiff should be permitted to pursue the specific discovery on the remaining federal claims set forth in Part III.C. below.

---

[2]     The DTSA is the act that amended the EEA to permit a federal private right of action for trade-secret misappropriation. The EEA, as amended, is codified at 18 U.S.C. § 1831, *et seq.*

**A.     The Stay Should Be Lifted on All Remaining Claims**

Plaintiff submits that a continued stay of the state-law claims would not promote judicial economy, but would instead be inefficient and inequitable.

All of the claims at issue—both state and federal—arise from a constellation of similar underlying facts and relationships. Discovery on each of the claims will therefore necessarily overlap.[3]  The party and third-party witnesses that Plaintiff will depose in connection with its CFAA and DTSA claims include many of the same witnesses it will depose in connection with its state-law claims. Efficiency and fairness are not advanced by requiring those witnesses to testify at multiple depositions, potentially about the same underlying events.

Moreover, Plaintiff's ability to pursue and obtain relief on its state-law claims will be meaningfully hindered by a continued stay. It will be more difficult to gather evidence—both documents and testimony—to support these claims as the events in question become more remote and witnesses' recollections grow stale. For this reason, among others, indefinite stays are disfavored by the Ninth Circuit, especially when, as here, the party opposing the stay seeks to remedy ongoing harms. *See Dependable Hwy. Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007) ("[G]eneral policy favor[s] stays of short, or at least reasonable, duration."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (holding indefinite stays are disfavored when party

---

[3]     Counsel for at least one of the defendants agrees. (*See* Aug. 14, 2017 Tr. at 16:17–24 (counsel for Dusseault noting that "it would seem that the discovery on the trade secret claim and the nontrade secret claims . . . could overlap.")).

seeks to remedy ongoing harm). There is no need for a continued stay in this case; indeed, defendants have never requested one. The Court has already determined that Plaintiff has stated viable state-law claims, such that discovery will go forward on them at some point; there is no reason to prohibit Plaintiff from pursuing those claims now.

### B.    Plaintiff Should Be Permitted to Amend Its CFAA Claim

Plaintiff intends to seek leave to amend its complaint to add Dusseault, Efremidze, eBay, and StubHub as defendants with respect to the CFAA claim. Plaintiff will brief this request on a schedule agreed to by defendants and/or authorized by the Court, and will fully set forth therein the rationale for its proposed amendment.

In short, there would be no prejudice to defendants if Plaintiff were permitted to amend its CFAA claim. First, the CFAA claim has been stayed for more than a year, and no discovery has taken place with regard to Plaintiff's CFAA-related allegations. Thus, no discovery effort would be duplicated as a result of the amendment. Second, the CFAA claim arises out of operative facts that are broadly related to those underlying the DTSA and other claims against Dusseault, Efremidze, StubHub, and eBay. As a result, an amendment to refine the legal theory under which Plaintiff pursues recovery would not cause any prejudice as a practical matter. And, finally, there are not currently discovery or trial dates set, such that defendants will likewise suffer no prejudice with respect to timing. In these circumstances, there is no reason to deviate from the general policy under federal law that favors liberal amendment when no undue prejudice would result. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding courts should

– 11 –
**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

"freely give leave [to amend pleadings] when justice so requires"); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

If the Court determines that full briefing would be appropriate, Plaintiff proposes that it file its motion for leave to amend by October 22, 2018; that defendants file their oppositions by November 5; and that Plaintiff file its reply, if any, by November 12.

## C.   Discovery on Remaining Federal Claims

Following the MSJ Order, the following DTSA and CFAA claims remain in dispute:

- DTSA claims against StubHub, including the wrongful acquisition, disclosure, and use of Plaintiff's trade secrets—that do not pertain to its copying of Plaintiff's source code as part of its own programming;

- DTSA claims against the other defendants, including the wrongful acquisition, disclosure, and use of Plaintiff's trade secrets; and

- CFAA claims against Gray, and (if permitted) against Dusseault, Efremidze, eBay, and StubHub.

The legal theories of liability and the discovery that Plaintiff will seek to prove each of those theories are set forth below.

### 1.   Remaining DTSA Claims

Plaintiff has alleged in detail the trade secrets that defendants, including StubHub, misappropriated. (*See* MTD Order at 4 ("Plaintiff has alleged specific trade secrets in a detailed description")). That information consists of more than just the Klutch source code, which was the subject of the limited discovery the Court authorized; it also includes "Calaborate's [other] computer programs, coding

methodologies, computer techniques, and related concepts and know-how." (4AC ¶ 108). Plaintiff alleges that the defendants misappropriated those trade secrets in three ways: by wrongly acquiring, wrongly disclosing, and wrongly using that protected information. Each type of conduct violates the DTSA. *See* 18 U.S.C. §§ 1836(b)(1), 1839(5).

Section 1836(b)(1) provides a private right of action for a trade secret that is misappropriated. That section states, "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." § 1836(b)(1). Section 1839(5), in turn, defines "misappropriation" to mean wrongful acquisition, wrongful disclosure, and/or wrongful use: "the term 'misappropriation' means— (A) <u>acquisition</u> of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) <u>disclosure</u> or <u>use</u> of a trade secret of another without express or implied consent by a person" with the required level of knowledge. § 1839(5) (emphasis added).

***Wrongful Acquisition.*** Plaintiff alleges that the individual defendants wrongly accessed and obtained its trade secrets through the use of improper means:

> Defendants used improper means to acquire knowledge of the trade secrets . . . Gray, Dusseault, and Efremidze obtained at least some of these trade secrets that comprised part of the Calendar Research property via download or duplication after title of the Calendar Research Property was transferred to Calendar Research, and thereby obtained this property through active theft.

(4AC ¶ 115). Gray also allegedly accessed and downloaded the protected information after he had departed from Calaborate, which likewise constitutes wrongful acquisition:

> After Gray was no longer with Calaborate, and with a firm offer of employment at a competitor to Calendar Research in hand, Gray duplicated the proprietary information of Calendar Research when he backed up, on his own personal computer, his Calaborate Google account that possessed proprietary information belonging to Calendar Research.

(*Id.* ¶ 125). StubHub and eBay allegedly knew about this wrongful acquisition:

> eBay and StubHub, having previously attempted unsuccessfully to acquire Calaborate and its assets, including its trade secrets, had full knowledge of the valuable proprietary assets owned by Calaborate. eBay and StubHub nevertheless actively sought to and did hire Gray, Dusseault, and Efremidze with the full knowledge and intent that Gray, Dusseault, and Efremidze would bring proprietary information and trade secrets that could be exploited for economic gain. eBay and StubHub, therefore, obtained Calaborate's trade secrets through active theft.

(*Id.* ¶ 116). And, with this knowledge, "eBay and StubHub made Gray, Efremidze, and Dusseault offers of employment, with the expectation that the former Calaborate employees would bring with them the source code of the Klutch application." (*Id.* ¶ 124). This illicit expectation demonstrates the companies' intent to wrongfully acquire the trade secrets. Indeed, eBay and StubHub encouraged the individual defendants' theft, such that they played an active role in the wrongful acquisition:

> Gray conspired with fellow Calaborate employee Lisa Dusseault as well as eBay and StubHub employees, to take assets that were about to be foreclosed upon by Calendar Research and provide those assets to eBay and StubHub. There was a calculated plan to take the source code and the Calaborate team to eBay and StubHub. Defendants planned to incorporate the source code of Klutch, and the intellectual property of Calendar Research into StubHub and eBay's applications. Upon

– 14 –

1    information and belief, eBay and StubHub were aware of and/or
2    encouraged Gray's, Dusseault's, and Efremidze's actions.

3    (*Id.* ¶ 127). All of this conduct violated § 1836(b).

4        ***Wrongful Disclosure.*** In addition to defendants' wrongful acquisition of the
5
6    trade secrets, the complaint alleges that Efremidze also wrongly disclosed protected
7    information to the public:

8        Efremidze uploaded portions of the source code to a website called
9        Github. Github is a platform through which application developers and
         programmers can share code with one another, while also having the
10       option to compile private repositories of code. Efremidze uploaded the
11       code in such a way that made it not only viewable to the public at large,
12       but also capable of being copied and incorporated into other
         applications or programs.

13   (*Id.* ¶ 126). The other defendants allegedly knew of and aided this disclosure: "Each
14
15   Defendant engaged or participated in a civil conspiracy or otherwise aided and abetted
16   every other Defendant in its acts of misappropriation of trade secrets, as alleged herein."
17   (*Id.* ¶ 128).
18

19       Further, the allegations regarding wrongful acquisition, set forth above, likewise
20   show wrongful disclosure: the individual defendants disclosed trade secrets to eBay and
21
22   StubHub, with the encouragement and support of those corporations. (*E.g.*, *id.* ¶ 116
23   ("eBay and StubHub nevertheless actively sought to and did hire Gray, Dusseault, and
24   Efremidze with the full knowledge and intent that Gray, Dusseault, and Efremidze
25
26   would bring proprietary information and trade secrets that could be exploited for
27   economic gain.")). Like the wrongful acquisition, this disclosure violates the DTSA
28   whether or not defendants ultimately used the protected information.

– 15 –

***Wrongful Use.*** Finally, Plaintiffs contend that defendants have misappropriated their trade secrets by wrongfully using that information, including in ways that do not involve directly copying Plaintiff's source code into StubHub's programming. (*E.g.*, *id.* ¶ 113 ("Defendants are misusing the appropriated Calendar Research Trade Secret Property for their own benefit.")). Plaintiff's allegations show that the individual defendants wrongfully used the trade secrets to secure employment at StubHub and eBay—that is, they used information rightly belonging to Plaintiff for their own economic advantage. For instance, eBay and StubHub allegedly offered the individual defendants employment "with the intent" that they would provide the trade secrets:

> StubHub made employment offers to Gray, Dusseault, and Efremidze with the intent of having the three replicate Calaborate features and code, proprietary information that was the exclusive property of Calaborate, in StubHub's own products. eBay made an employment offer to Gray with the intent of having him replicate Calaborate features and code, proprietary information that was the exclusive property of Calaborate, in eBay's own products.

(*Id.* ¶ 37; *see also* ¶ 59 ("In or about May 2015, StubHub and eBay hired Gray with the intent of obtaining and using Calaborate trade secrets."); ¶ 124). The individual defendants were more attractive potential employees because they had access to Plaintiff's information, and they used that to their advantage.

Moreover, negative know-how can be just as useful as affirmative know-how. *E.g.*, *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1047 (S.D. Cal. 2017) ("Misappropriation includes not only wholesale pirating of an idea, but also the unauthorized utilization of an idea as a starting point or guide in developing

– 16 –

a process or as a means to understand what pitfalls to avoid."); Melvin F. Jager, 1 Trade Secrets Law § 3:34 (2006) ("Since knowing what not to do often leads automatically to knowing what to do, such valuable negative information has been granted trade secret protection."). Thus, Plaintiff's allegations encompass the claim that eBay and StubHub wrongfully used Plaintiff's trade secrets by improperly benefitting from the "lessons learned" regarding certain failures of the Klutch application, which informed the development of the StubHub applications. A limited source-code comparison would not reveal such an improper use; only fulsome discovery would bear that out.

*     *     *

To prove these remaining DTSA allegations, Plaintiff intends to pursue targeted discovery from the defendants and select third parties, which will include, *inter alia*[4]:

- Deposition testimony from individual defendants

- Deposition testimony from eBay and StubHub regarding (i) misappropriation of Plaintiff's trade secrets, (ii) the potential acquisition of Calaborate, (iii) the hiring and employment of the individual defendants by StubHub, and (iv) plans to incorporate features of Klutch into their applications

- Communications among defendants regarding Plaintiff's trade secrets

- Documents reflecting the divulging or transfer of Plaintiff's property to StubHub and/or eBay

---

[4]     Plaintiff reserves the right to revise or supplement this anticipated discovery, including to the extent any discovery reveals additional relevant sources or topics of information.

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

- Documents relating to the potential acquisition of Calaborate by StubHub/eBay

- Documents relating to StubHub's hiring and employment of the individual defendants as employees and/or contractors

- StubHub and eBay documents discussing Plaintiff's property and/or plans to incorporate features of that property into their applications

- Targeted third-party depositions, including of eBay and StubHub employees involved in (i) the potential acquisition of Calaborate, and (ii) the recruitment and hiring of the individual defendants

- Targeted third-party discovery, including account details and access logs for relevant data-storage providers

- Expert discovery and depositions regarding damages

This discovery can be conducted efficiently and expeditiously in a manner that avoids imposing undue burdens on defendants, while permitting Plaintiff a fair opportunity to pursue its claims.

## 2.   *CFAA Claims*

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, prohibits certain conduct relating to wrongfully accessing a protected computer in order to obtain information. Among conduct prohibited by the CFAA is:

i.   Intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining information, § 1030(a)(2)(c);

ii.   Knowingly and with intent to defraud, accessing a protected computer without authorization, or exceeding authorized access, and thereby furthering the fraud and obtaining anything of value, § 1030(a)(4);

---

– 18 –

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

iii.   Intentionally accessing a protected computer without authorization, and as a result of such conduct: (a) recklessly causing damage, or (b) causing damage and loss, § 1030(a)(5)(B)–(C); and

iv.   Conspiring to perform any of these acts, § 1030(b).

The CFAA allows a party who has been harmed by such violations to bring a civil suit against the violator. § 1030(g). The prohibited conduct must satisfy certain specified factors, one of which is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." § 1030(c)(4)(A)(i)(I).

***Defendant Gray.*** Gray violated the CFAA when, without authorization, he accessed Plaintiff's property, consisting of source code and other trade secrets, that was located on computers used to develop Calaborate's software. (4AC ¶¶ 134–35). This unauthorized access included using a Calaborate laptop after the company had been sold to Plaintiff, and continuing to use that laptop to access trade-secret information. (*Id.*). Gray also violated the CFAA by wrongfully accessing Calaborate's accounts on services such as Google Drive, Dropbox, and Evernote—and copying data from those accounts—without authorization. (*Id.* ¶ 136). These and other acts were prohibited by the CFAA.

Moreover, Gray made repeated promises—that were, in fact, misrepresentations intended to mislead—that he would return Plaintiff's property, but he repeatedly failed to do so. (*E.g.*, *id.* ¶¶ 53–55). And, even when he did return certain property, like a mobile phone, it was wiped of all data, despite express instructions to preserve its contents. (*Id.* ¶ 54). At the time he made these promises, Gray had already duplicated

– 19 –

and taken much of Plaintiff's property, including proprietary information. (*Id.* ¶ 101). Indeed, Gray returned a small portion of the property—while retaining control over most of it—in order to give the false impression that he had delivered all of the property in question. Such fraudulent conduct is prohibited by the CFAA, which forbids the unauthorized access of a computer to further fraud and obtain something of value.

**Defendants Dusseault, Efremidze, StubHub, and eBay.** The Complaint also alleges that Dusseault and Efremidze conspired with Gray to arrange an "exit strategy" that would ensure they had electronic access to Plaintiff's property—including both trade secrets and other information—after they left Calaborate. (*E.g.*, *id.* ¶ 39). StubHub and eBay also conspired with Gray to wrongfully obtain Plaintiff's property, so that they could benefit from that proprietary information. (*E.g.*, *id.* ¶ 127). Such conspiracy on the parts of the other defendants—which Plaintiff will further flesh out in its amended pleading, if permitted—is likewise prohibited by the CFAA.

\*       \*       \*

To prove these CFAA allegations, Plaintiff intends to pursue targeted discovery from the defendants and select third parties, which will include, *inter alia* and in addition to the above[5]:

- Deposition testimony from the individual defendants

---

[5]     Plaintiff likewise reserves the right to revise or supplement this anticipated discovery, including to the extent any discovery reveals additional relevant sources or topics of information.

- Deposition testimony from StubHub and eBay regarding their knowledge of and encouragement of Gray to wrongfully access Plaintiff's information

- Documents regarding (i) Gray's accessing of the Calaborate accounts at issue, (ii) Plaintiff's property located in those accounts, (iii) Gray's confidentiality obligations, (iv) Gray's obligation to return Plaintiff's property, and (v) the individual defendants' "exit plan" from Calaborate

- Documents and physical evidence relating to Gray's destruction of Plaintiff's property

- Documents or devices showing that Gray backed up any stored data he had obtained from Calaborate accounts

- Documents and information relating to Gray wiping any phones or computers belonging to Plaintiff

- Third party discovery regarding Gray's accessing of Calaborate-related accounts

As with the DTSA discovery, this discovery can be conducted efficiently and expeditiously in a manner that is tailored to the issues in dispute, while fairly permitting Plaintiff to establish the basis of its CFAA claims.[6]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (i) clarify, in part, the August 7, 2018 Order; (ii) lift the stay on all remaining claims; and (iii) permit the discovery set forth above.

---

[6]    If the Court grants Plaintiff's request to lift the stay on all remaining claims, Plaintiff will promptly supplement this disclosure to include the limited additional discovery it will pursue in connection with the state-law claims.

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

| | |
|---|---|
| 1 | Dated: September 17, 2018 |

Respectfully submitted,

 /s/ Douglas S. Curran

**Pierce Bainbridge Beck Price & Hecht LLP**

John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com
600 Wilshire Blvd., Suite 500
Los Angeles, CA 90017
(213) 262-9333

Douglas S. Curran *(pro hac vice)*
dcurran@piercebainbridge.com
Conor B. McDonough *(pro hac vice)*
cmcdonough@piercebainbridge.com
20 West 23rd St., 5th Floor
New York, NY 10010
(213) 262-9333

*Counsel for Plaintiff Calendar Research LLC*

**Plaintiff's Supplemental Memorandum in Advance of October 1, 2018 Hearing**

1

**CERTIFICATE OF SERVICE**

2

3

   I hereby certify that on September 17, 2018, a true and correct copy of the above

4
document was filed through the ECF system and will be sent electronically to registered

5
participants identified on the Notice of Electronic Filing, and that paper or electronic

6
copies will be delivered to those indicated as non-registered participants.

7

8

9

                                        /s/ Douglas S. Curran

10
                                        Douglas S. Curran

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28