1   **Pierce Bainbridge Beck Price & Hecht LLP**

2   John M. Pierce (SBN 250443)
    jpierce@piercebainbridge.com

3   600 Wilshire Boulevard, Suite 500

4   Los Angeles, California 90017-3212
    (213) 262-9333

5

6   Douglas S. Curran (*pro hac vice*)
    dcurran@piercebainbridge.com

7   Conor McDonough (*pro hac vice*)
    cmcdonough@piercebainbridge.com

8   Adam C. Ludemann (*pro hac vice*)
    aludemann@piercebainbridge.com

9

10  20 West 23rd St., 5th Floor
    New York, NY 10010

11  (212) 484-9866

12
    *Attorneys for Plaintiff Calendar Research LLC*
13

14              THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16  **Calendar Research LLC,** a              Case No. 2:17–cv–04062–SVW–SS
    Delaware limited liability company,       Hon. Suzanne H. Segal
17
                  Plaintiff,                  **Plaintiff Calendar Research LLC's**
18                                            **Memorandum in Support of its Motion**
                                              **to Compel Additional Discovery**
19          v.

20  **Michael Hunter Gray**, an
    individual; **StubHub, Inc.,** a          **DISCOVERY MATTER**
21  Delaware corporation; **eBay Inc.**, a
    Delaware corporation; **Lisa**
22  **Dusseault,** an individual; **Lasha**   [Filed Concurrently with Notice of
23  **Efremidze,** an individual; and **Does**  Motion, Declaration of Douglas S. Curran,
    **5 through 10**, inclusive,              and [Proposed] Order]
24
25                Defendants.

26

27

28

---

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................... 1

II.     BACKGROUND ................................................................ 3

        A.      Defendants Failed to Meet Their Production
                Obligations, so the Court Reopened Discovery and
                Granted Plaintiff's Motion to Compel ........................................ 3

        B.      Defendants Dragged Their Feet, Plaintiff Moved to
                Compel, and the Parties Stipulated ............................................ 3

        C.      Defendants' Production Was Incomplete ................................. 4

                1.      Defendants' Production Contains Evidence of a Slack
                        Account Used at Block & Tackle that Was Not Produced
                        ........................................................................... 5

        D.      Defendant Mr. Efremidze Provided an
                Incomprehensible Document Purporting to be a
                Privilege Log ............................................................... 6

        E.      Defendant Mr. Gray Did Not Withhold Documents
                for Privilege .............................................................. 7

                1.      Mr. Gray's Production Appears to Contain Potentially
                        Privileged Material .......................................... 7

        F.      Depositions Are Scheduled for March 4, 2019 ......................... 8

III.    ARGUMENT ................................................................... 9

        A.      The Court Should Compel Mr. Gray and Mr.
                Efremidze to Search for Responsive Slack Messages
                and Make Production by a Date Certain ................................... 9

        B.      Defendants Have Waived Any Potential Claims of
                Privilege .................................................................. 12

                1.      Mr. Gray Waived Any Claims of Privilege by
                        Intentionally Producing Potentially Privileged Documents
                        ........................................................................... 12

                2.      Mr. Efremidze Waived any Potential Privilege Claims by
                        Providing a Functionally Useless "Privilege Log" ........ 15

        C.      The Court Should Grant Adverse Inferences and/or
                Evidentiary Sanctions ...................................................... 17

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.    Defendants and Their Counsel Should Bear the Costs of Plaintiff's Motion ....................................................... 21

IV.   CONCLUSION .................................................................................. 22

**Plaintiff's Memorandum in Support of its Motion to Compel Additional Discovery**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*U.S. ex rel. Bagley v. TRW, Inc.*,
  204 F.R.D. 170 (C.D. Cal. 2001) ........................................................ 12, 14

*Bess v. Cate*,
  2008 WL 5100203 (E.D. Cal. Nov. 26, 2008) ......................................... 14

*Bryant v. Mattel, Inc.*,
  2007 WL 5432962 (C.D. Cal. Feb. 14, 2007) ............................................ 9

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) ................................................................. 16

*Callan v. Christian Audigier, Inc.*,
  263 F.R.D. 564 (C.D. Cal. 2009) ............................................................. 13

*CDN Inc. v. Kapes*,
  197 F.3d 1256 (9th Cir. 1999) ................................................................... 9

*Chao v. Mazzola*,
  2006 WL 2319721 (N.D. Cal. Aug. 10, 2006) ............................... 14, 15, 16

*City of Moses Lake v. United States*,
  2005 WL 8158742 (E.D. Wash. Feb. 28, 2005) ....................................... 13

*City of San Diego v. Kinder Morgan Energy Partners, L.P.*,
  2012 WL 12884790 (S.D. Cal. May 1, 2012), *aff'd sub nom.*
  *California v. Kinder Morgan Energy Partners, LP*, 613 F.
  App'x 561 (9th Cir. 2015) ........................................................................ 12

*Estakhrian v. Obenstine*,
  2016 WL 6275599 (C.D. Cal. May 17, 2016) ........................................... 19

*Estakhrian v. Obenstine*,
  No. CV11-3480-FMO (CWX), 2016 WL 6868178 (C.D. Cal.
  Feb. 29, 2016), *report and recommendation adopted*, No. CV
  11-3480 FMO (CWX), 2016 WL 6275599 (C.D. Cal. May
  17, 2016) ............................................................................................. 18, 20

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

*Evans v. Alliedbarton Security Servs., LLP,*
 2009 WL 5218010 (N.D. Cal. Dec. 31, 2009) ...........................................21

*Hartford Fire Ins. Co. v. Garvey,*
 109 F.R.D. 323 (N.D. Cal. 1985) ................................................. 12, 13, 14

*In re Katz Interactive Call Processing Litig.,*
 2008 WL 11343370 (C.D. Cal. Feb. 22, 2008) .........................................14

*MGA Entm't, Inc. v. Nat'l Prod. Ltd.,*
 2012 WL 4052023 (C.D. Cal. Sept. 14, 2012) .........................................18

*Olney v. Job.com,*
 2014 WL 4629062 (E.D. Cal. Sept. 15, 2014) ...........................................9

*Pac. Coast Steel v. Leany,*
 2011 WL 4704217 (D. Nev. Oct. 4, 2011) ................................................12

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.,*
 210 F.3d 1112 (9th Cir. 2000) ("Section 1927 authorizes the
 imposition of sanctions against any lawyer who wrongfully
 proliferates litigation proceedings once a case has
 commenced.") ..............................................................................................21

*Sandoval v. Lagoon Associates,*
 LLC, 2016 WL 9113994 (C.D. Cal. Mar. 23, 2016)...................................9

*Sherwood v. BNSF Ry. Co.,*
 325 F.R.D. 652 (D. Idaho 2018), *clarified* 2018 WL 2228889
 (D. Idaho May 15, 2018) ...........................................................................16

*Strategic Partners, Inc. v. Koi Designs, LLC,*
 2018 WL 1989505 (C.D. Cal. Jan. 23, 2018)..................................... 17, 18

*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.,*
 2005 WL 643462 (D. Kan. Mar. 16, 2005)...............................................19

*Tr. of Operating Engineers Pension Tr. v. White's Excavating,
 Inc.,*
 2009 WL 10675986 (C.D. Cal. Feb. 27, 2009) .........................................21

*United States v. Al-Shawaf,*
 2017 WL 5997440 (C.D. Cal. Sept. 5, 2017) ............................................17

– iv –

*USACM Liquidating Tr. v. Monaco*,
   2010 WL 1849291 (D. Nev. May 6, 2010) .................................................18

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................... 18, 20, 21

Fed. R. Civ. P. 26(g)(3) ...........................................................................21

Fed. R. Civ. P. 34 .......................................................................................9

Fed. R. Civ. P. 37 ............................................................................ 9, 17, 18

Fed. R. Evid. 502(b) ................................................................................12

Order. Dkt. 218 ........................................................................................10

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Calendar Research LLC respectfully brings this motion to compel Defendants Michael Hunter Gray and Lasha Efremidze (together, "Defendants") to comply with their discovery obligations.  Once again, the parties find themselves before the Court because Defendants have failed to meet those obligations.

After months of delay and misrepresentation by Defendants and their counsel, the District Court granted Plaintiff's request to narrowly reopen discovery through March 4, 2019 for the purpose of "allowing Plaintiff to seek any outstanding responsive and non-privileged documents from Defendants [Michael Hunter] Gray and [Lasha] Efremidze." Dkt. 249.  Given the problems with Mr. Gray's previous productions and Defendants' history of noncompliance, Plaintiff filed a motion to compel to ensure that all responsive documents sought in the extended discovery window were timely produced. Dkt. 252.  That motion called for production by February 15.  Dkt. 252-1 at 2. Prior to the Court's resolution of the motion, however (and in an effort to preserve judicial resources), the parties entered into a stipulation (the "Stipulation"), Dkt. 258, and Plaintiff withdrew that motion, Dkt. 259. Defendants stipulated that they would produce all documents by February 19. Plaintiff learned two days ago, on February 25, that they have failed to do so, as explained below.  With only five days left in the extended discovery period, Plaintiff is once again forced to seek the Court's intervention.

On February 19, Defendants produced over 23,000 documents. But Defendants' productions omitted relevant Slack messages from Defendants' time at Block & Tackle, the contractor entity through which the individual defendants were hired by StubHub and eBay.  Plaintiff discovered this omission only because Mr. Efremidze's production contains Slack email notifications, a

**Plaintiff's Memorandum in Support of its Motion to Compel Additional Discovery**

1    feature the Slack program uses to alert users of certain messages.  *See* Section

2    III.A.  Thus Defendants withheld the messages while also producing proof of

3    their omission.  Then, on February 25, Mr. Efremidze produced another 2,635

4    documents (one week after the Stipulation's deadline), while blaming his

5    document vendor for the oversight.

6         Separately, Mr. Efremidze stipulated that he would provide a privilege

7    log by February 22, but failed to do so.  He instead served a completely

8    incomprehensible document with dozens and dozens of entries that do not even

9    contain English characters, and that in any event do not contain any purported

10   bases for claiming the withheld documents are privileged.  For his part, Mr.

11   Gray has acknowledged that he intentionally produced documents on February

12   19 without having conducted a privilege review, and purposely chose not to

13   withhold any documents as privileged.

14        For these reasons and those that follow, Plaintiff respectfully requests

15   that the Court: (1) order Defendants to produce all relevant Slack messages by

16   12:00 PM PT on March 1; (2) order that any privilege as to those materials

17   produced by Mr. Gray and those withheld by Mr. Efremidze was and is waived;

18   and (3) require Mr. Efremidze to produce any documents withheld from

19   production pursuant to any waived privilege by 12:00 PM PT on March 1.

20   Plaintiff also seeks evidentiary sanctions against Mr. Gray and Mr. Efremidze

21   and asks this Court to order that Defendants and their counsel, Michael M.

22   Baranov ("Mr. Baranov"), pay the costs and fees Plaintiff expended in bringing

23   this Motion.

24

25

26

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

II. **BACKGROUND**

A. **Defendants Failed to Meet Their Production Obligations, so the Court Reopened Discovery and Granted Plaintiff's Motion to Compel**

On January 22, 2019, following months of half-answers and incomplete productions, Plaintiff moved to compel production from Defendants. Dkt. 258 at 1. The Court granted the motion in relevant part on January 22, expressing "concern[] about the inconsistent positions taken by Defendants Mr. Gray and Mr. Efremidze in response to Plaintiff's requests for discovery and the failure of [those] defendants to provide all responsive documents to Plaintiff in a timely manner." *Id.* The Court then reopened discovery through March 4 "for the limited purpose of allowing Plaintiff to seek any outstanding responsive and non-privileged documents from Defendants Mr. Gray and Mr. Efremidze." *Id.* Judge Wilson's Order also permitted Plaintiff to conduct additional depositions of Defendants for the purpose of examining Mr. Gray and Mr. Efremidze on documents that they had not yet produced, and referred the Parties to this Court regarding any discovery disputes. *Id.*

B. **Defendants Dragged Their Feet, Plaintiff Moved to Compel, and the Parties Stipulated**

On February 1, 2019—the day after Judge Wilson reopened discovery—counsel for Plaintiff emailed Mr. Baranov requesting a meet-and-confer teleconference. Dkt. 252-1 at 14; Dkt. 252-2 ¶ 42, Exhibit K. The teleconference went forward on February 5. *See* Dkt. 252-2 ¶ 42. During the meet and confer, Mr. Baranov confirmed that Defendants had failed to conduct reasonable searches and agreed in principle that Defendants would conduct searches in the sources identified by Plaintiff using negotiated search terms. *Id.* Plaintiff informed Mr. Baranov that it would prefer to avoid additional motion practice before the Court and requested that the parties stipulate to additional searches and production from Defendants and agree to a date certain by which

– 3 –

**Plaintiff's Memorandum in Support of its Motion to Compel Additional Discovery**

1     any additional documents would be produced, so that Plaintiff would be

2     allowed reasonable time to review any such documents prior to re-deposing

3     Defendants. *Id.* Mr. Baranov would not agree to enter into a stipulation with

4     Plaintiff. *Id.*

5         On February 6, Plaintiff sent Mr. Baranov a proposed stipulation and

6     search terms and followed up on its request for a date certain for additional

7     production, which Mr. Baranov ignored. Dkt. 252-2, Exhibits L-M. Plaintiff

8     continued to press the issue with Mr. Baranov, but Mr. Baranov refused to

9     provide a date certain by which additional productions would be made and

10    refused to stipulate regarding additional discovery.  Dkt. 252-2, Exhibit N.

11    Plaintiff therefore moved to compel on February 11, seeking production by

12    February 15.  Dkt. 252-1.

13        Thereafter, Defendants wrote to Plaintiff requesting that the parties agree

14    to a stipulation, which the parties filed on February 14, 2019, *see* Dkt. 258,  and

15    Plaintiff withdrew its motion to compel. Dkt. 259 at 1.  The Stipulation required

16    Defendants to search for additional documents from any "sources known by

17    Defendants that are likely to contain ESI or other Documents not yet searched

18    in this Action," to produce all documents by February 19, and to serve privilege

19    logs by February 22.  Dkt. 258 at 2.

20       **C.**     **Defendants' Production Was Incomplete**

21        Discovery closes on March 4, 2019.  On February 19, 2019, Defendants

22    produced over 23,000 documents.  Declaration of Douglas S. Curran ¶ 2; Exs.

23    A, B.[1]  (Mr. Gray produced 19,497 documents, Decl. ¶ 2; Ex. A; and Mr.

24    Efremidze produced 3,826 documents, Decl. ¶ 2; Ex. B.)  Defendants

25    represented that their productions were complete, but (i) Plaintiff learned

26

_____

[1]      References herein to "Decl." are to the accompanying Declaration of Douglas S.
Curran. References herein to "Ex." refer to the Exhibits to the accompanying Declaration of
Douglas S. Curran.

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1 recently that Defendants had failed to produce relevant Slack messages, and (ii)
2 a week later, on February 26, Mr. Efremidze unexpectedly produced another
3 2,635 documents. Decl. ¶ 3; Ex. C.

4          1.    <u>Defendants' Production Contains Evidence of a Slack</u>
5                <u>Account Used at Block & Tackle that Was Not Produced</u>

6       Slack is an internal messaging system used by companies, teams, and
7 firms to message and collaborate in real-time. Decl. ¶ 4. Calaborate used
8 Slack extensively, and many of those conversations were responsive and
9 relevant to discovery in this action. *Id.* Block & Tackle, the contractor entity
10 through which the individual defendants were hired by StubHub and eBay, also
11 used Slack, but Defendants have not produced any of the relevant Slack
12 conversations or messages. Decl. ¶ 3.

13       Plaintiff learned this fact because Mr. Efremidze's production contains
14 Slack email notifications sent to him from a Block & Tackle Labs Slack
15 account, but not the underlying Slack conversations and messages themselves.
16 *Id.* The email notifications in Mr. Efremidze's production demonstrate that
17 Block & Tackle created and used a Slack account as early as March 26, 2015,
18 **before** the individual defendants' employment with Calaborate ended. Decl. ¶
19 4; Ex. D. The email notification also indicates that Mr. Gray was the Block &
20 Tackle Slack Labs account administrator, employing the same Slack username
21 as he had at Calaborate. *Id.* As administrator, Mr. Gray has access to all
22 messages sent to or from any user on the Block & Tackle Labs Slack account.
23 *Id.*

24       When confronted, Mr. Baranov said that he sent the log-in credentials for
25 that Slack account to his document vendor on February 25—just after Plaintiff
26 alerted Mr. Baranov to this omission of these messages; this shows that
27 Defendants had the credentials on hand. Decl. ¶ 4; Exs. E, F. Yet neither Mr.

28

**Plaintiff's Memorandum in Support of its Motion to Compel**
**Additional Discovery**

1   Efremidze nor Mr. Gray produced any Slack messages.  Decl. ¶ 4.  Mr. Baranov

2   has indicated that he will endeavor to produce the Slack messages, Ex. F, but

3   past agreements and the Stipulation proved insufficient, so Plaintiff seeks a

4   Court order to ensure that the production is timely and comprehensively made.

### D.    Defendant Mr. Efremidze Provided an Incomprehensible Document Purporting to be a Privilege Log

On February 22, 2019, Mr. Baranov served a document that he represented to be Mr. Efremidze's privilege log.  Ex. H.  This document was functionally useless.  Every single entry on the first six pages of the nine-page document contains hash symbols ("####") rather than readable text in at least some of the columns.  *See id.*  Many of the cells on these pages are also empty.  *See id.*  The last three pages contain what may be partial file extensions or folder locations, but they are truncated, and it is not clear to which documents these entries pertain.  *See id.*  Only two of the pages contain column headers, so Plaintiff's counsel could not even speculate as to what the missing information might be.  *See id.*  Moreover, the document does not contain a single statement in connection with a single document indicating in any way the basis for Mr. Efremidze's claim of privilege.  *See id.*

Plaintiff's counsel therefore sought a proper log from Mr. Baranov on February 25.  Ex. I.  Mr. Baranov promised a corrected privilege log by February 27.  Ex. J.  Mr. Baranov's response and demand for two additional days, however, indicated that the issue was not merely a technical one, but that, instead, Mr. Efremidze had entirely ignored his stipulated obligation to serve a log by February 22.  Plaintiff then informed Mr. Baranov that, given the failure to abide by the stipulation, Mr. Efremidze's claims of privilege had been waived. Ex. K.

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

**E.      Defendant Mr. Gray Did Not Withhold Documents for Privilege**

For his part, Mr. Gray did not serve a privilege log.  Decl. ¶ 6.  On February 25, Plaintiff's counsel inquired whether Mr. Baranov had withheld any documents on the basis of attorney-client privilege, writing, "Can you please confirm that you did not intend to -- and in fact did not -- withhold any documents from Mr. Gray's Feb. 19 production on privilege grounds?"  Ex. I. Mr. Baranov responded: "As far as Mr. Gray's production is concerned, I am told by [the vendor] that in the interest of time we produced everything.  You will see a reservation of rights on my transmittal letter to recall documents we find on the basis of privilege."  Ex. J.  That reservation, however, was focused on relevance.  Mr. Baranov wrote:

> Please note that it appears that the terms and instructions provided by plaintiff, incorporated as Appendix 1 to the stipulation, have resulted in a number of documents retrieved which are not relevant to the subject matter of this litigation and which are protected by Mr. Gray's right of privacy.  It appears that his bank statements and other confidential financial information are included, for example.  Nevertheless, in the spirit of cooperation and good faith, we are producing the Xact Data's results.  We reserve the right to recall the documents and to object to their use after a more thorough review and analysis.  Until such time, all of our rights are reserved, and we remind everyone that all of the documents are subject to the "Highly Confidential – Attorneys' Eyes Only" designation.

Ex. A.  Thus Mr. Gray and his counsel intentionally did not perform a privilege review, but instead produced all documents to Plaintiff with a vague reservation of rights aimed at document relevance.

       1.     <u>Mr. Gray's Production Appears to Contain Potentially Privileged Material</u>

During the course of its review, Plaintiff's counsel noticed that some documents produced by Mr. Gray may contain privileged information.  Decl. ¶

– 7 –

1    6.  As soon as Plaintiff's counsel determined that certain documents may
2    contain privileged information, counsel immediately stopped reviewing them.
3    *Id.*  Plaintiff's counsel also observed that the potentially privileged documents
4    shared a metadata filepath, "PERSONAL STUFF\Mark Lawsuit."  *Id.*  The
5    "Mark" here is likely Mark Kolokotrones, who served on Calaborate's Board
6    of Directors, purchased Calaborate through Knight & Bishop, and has provided
7    deposition testimony in this matter.  Having made this observation, Plaintiff's
8    counsel instructed its document vendor to isolate and sequester all documents
9    with that filepath.  *Id.*  The vendor sequestered these documents, removing them
10   from the review process entirely.  *Id.*

11       There are 30 documents with this "Mark Lawsuit" filepath currently
12   sequestered and removed from Plaintiff's review.  *Id.*  In addition, Plaintiff's
13   counsel also discovered another document outside of this filepath that may have
14   contained privileged information and likewise sequestered it.  *Id.*  Because
15   Plaintiff ceased its review of these documents and sequestered them, Plaintiff
16   can provide the Court with no further information relating to the contents of
17   these possibly privileged documents.  Because Mr. Gray produced these
18   documents *intentionally* without having first conducted a privilege review, and
19   then confirmed that he did not intend to withhold any documents, Plaintiff
20   informed Mr. Baranov on February 26 that it believed Mr. Gray had waived any
21   potential claim of privilege. Ex. K.

22       **F.    Depositions Are Scheduled for March 4, 2019**
23       Judge Wilson's Order permitted Plaintiff to conduct additional
24   depositions of Defendants.   Dkt. 249 at 1.   Plaintiff has noticed these
25   depositions for March 4, 2019.  Decl. ¶ 8.

26

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

### III.    ARGUMENT

#### A.    The Court Should Compel Mr. Gray and Mr. Efremidze to Search for Responsive Slack Messages and Make Production by a Date Certain

A party may seek to compel the production of documents when "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(3)(B)(iv); *see Sandoval v. Lagoon Associates*, LLC, 2016 WL 9113994, at *3-4 (C.D. Cal. Mar. 23, 2016).  And where, as here, a party stipulates to take a certain action and fails to do so, a court may compel the party to remedy that failure.  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) ("Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent."); *Olney v. Job.com*, 2014 WL 4629062, at *5 (E.D. Cal. Sept. 15, 2014) (parties' stipulation enforceable pursuant to Rule 29); *Bryant v. Mattel, Inc.*, 2007 WL 5432962, at *2 (C.D. Cal. Feb. 14, 2007) (enforcing discovery stipulation).

As Plaintiff has repeatedly demonstrated, Plaintiff's document requests were reasonable, not overly broad, and narrowly tailored/drafted with reasonable particularity.  *See* Dkt. 201 at 41.  From the beginning, Plaintiff's requests sought, *inter alia*, documents and communications relating to: (1) Mr. Gray's and Mr. Efremidze's plans to jointly seek employment with Defendants eBay or StubHub; (2) the access, possession, and review of Evernote and Dropbox accounts used to store Calaborate's files and documents and Defendants' exit plan to terminate their employment at Calaborate; and (3) any projects worked on by Defendants while employed by StubHub.  Dkt. 252-2, Exhibit A, RFP Nos. 21, 32, 35, 38, 43.  Those requests are central to this action, and Defendants were required to search for and produce all non-privileged, responsive documents in their possession, custody or control.  Defendants

1  failed to do so during the original discovery period ending January 11, 2019, in

2  contravention of the Court's December 28, 2018 Order.  Dkt. 218.  Defendants

3  have repeated that failure, withholding relevant Slack messages from their time

4  at Block & Tackle, in violation of the Stipulation, which required Defendants

5  to search for additional documents from any "sources known by Defendants

6  that are likely to contain ESI or other Documents not yet searched in this

7  Action."  Dkt. 258 at 2.

8      As explained in Section II.C.1 above, Block & Tackle was the contractor

9  entity through which the individual defendants were hired by StubHub and

10  eBay.  Decl. ¶ 3.  A Block & Tackle Labs Slack account, and the messages

11  exchanged thereon, are therefore highly relevant to this action, which centers

12  on the appropriation and use of Calaborate's trade secrets at StubHub.  These

13  Slack messages will at minimum contain communications between Defendants

14  about what they worked on while at StubHub.  *See* Ex. G (containing Mr. Gray's

15  note, which was created on his first day at Block & Tackle, that all major

16  communication be kept in Slack).  Moreover, as administrator of the account,

17  Mr. Gray should have access to, custody of, and/or control over all messages

18  sent to and from any users on that account.  Decl. ¶ 4; Ex. D.  Pursuant to the

19  Stipulation and Plaintiff's original document requests, Plaintiff is entitled to

20  responsive messages from this Slack account no matter the sender or recipient.

21  Mr. Gray has no justification for failing to collect and produce documents from

22  the account, particularly as Defendants were able to locate the account

23  credentials soon after Plaintiff alerted Mr. Baranov to the omitted messages.

24  Decl. ¶ 4; Ex. F.

25      Defendants have therefore again failed to meet their discovery and

26  stipulated obligations, and Plaintiff is aware of the existence of these

27  documents only because of its own investigation.  Plaintiff would still be

28

**Plaintiff's Memorandum in Support of its Motion to Compel Additional Discovery**

1   unaware of these withheld documents had this Court not granted Plaintiff's

2   motion to compel and ordered Mr. Efremidze to produce responsive documents

3   from his email accounts.  Had Mr. Gray and Mr. Efremidze originally complied

4   with their discovery obligations, the parties could have avoided all of these *ex*

5   *parte* motions to compel.

6        For these reasons, Plaintiff respectfully requests that the Court order

7   production of any responsive, non-privileged documents, including these Slack

8   messages, by 12:00 PM PT on Friday, March 1.  Such a truncated production

9   deadline is required in order to give Plaintiff a chance to meaningfully review

10  any newly produced documents before the March 4 depositions, one of which

11  is scheduled for as early as 7:30 AM to accommodate Mr. Gray's schedule.

12  Decl. ¶ 8; Ex. M.[2]

13       In addition, given Defendants' and Mr. Baranov's repeated

14  misstatements and inconsistencies regarding discovery to date, Plaintiff

15  requests that the Court order Mr. Efremidze, Mr. Gray, and Mr. Baranov to

16  produce sworn statement(s) from their document vendor confirming that all

17  Block & Tackle Slack channels and messages have been searched using the

18  parties' stipulated terms, and identifying the steps taken to perform the

19  searches, the date of the searches, the individuals conducting the searches, and

20  any other pertinent details.  As outlined in the Stipulation, Plaintiff also

21  respectfully requests that the Court order that Defendants' document vendor

22  collect and preserve all Slack messages and any other relevant documents, and

23  that the vendor perform the searches rather than Defendants themselves

24  performing them.  Finally, Plaintiff requests that the Court order that these

25

26  [2]    Plaintiff has simultaneously moved to extend the discovery deadline with respect to
        only Gray and Efremidze (and the deadline for all defendants' motions for summary judg-
27      ment) by two weeks in order to permit Plaintiff to meaningfully review the new Slack mes-
        sages that Defendants will produce.  That motion will be before Judge Wilson.
28

– 11 –

**Plaintiff's Memorandum in Support of its Motion to Compel**
**Additional Discovery**

1  Slack messages be produced in JSON file format organized by Day, Date, and
2  Conversation Group with metadata fields indicating the UserID and the
3  date/time, which counsel for the parties have discussed.  Decl. ¶ 4.

4      **B.**    **Defendants Have Waived Any Potential Claims of Privilege**
5            1.    <u>Mr. Gray Waived Any Claims of Privilege by</u>
6                 <u>Intentionally Producing Potentially Privileged Documents</u>

7  Plaintiff seeks a declaratory ruling that Plaintiff may review and use any
8  documents produced by Mr. Gray because Mr. Gray has intentionally waived
9  any claims of privilege with respect to those documents.

10  Disclosure of privileged material does not operate as a waiver <u>only</u> where
11  (1) the disclosure is inadvertent; (2) the holder of the privilege took reasonable
12  steps to prevent disclosure; and (3) the holder promptly took reasonable steps
13  to rectify the error.  Fed. R. Evid. 502(b).  Courts in the Ninth Circuit analyze
14  the totality of the circumstances when determining whether the inadvertent
15  disclosure results in a waiver of applicable privileges. *U.S. ex rel. Bagley v.*
16  *TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001).  Factors to be considered in
17  determining whether the disclosure was inadvertent include: (1) the
18  reasonableness of the precautions to prevent inadvertent disclosure; (2) the time
19  taken to rectify the error; (3) the scope of the discovery; (4) the extent of the
20  disclosure; and (5) the overriding issue of fairness. *Pac. Coast Steel v. Leany*,
21  2011 WL 4704217, at *4 (D. Nev. Oct. 4, 2011); *see City of San Diego v. Kinder*
22  *Morgan Energy Partners, L.P.*, 2012 WL 12884790, at *2 (S.D. Cal. May 1,
23  2012), *aff'd sub nom. California v. Kinder Morgan Energy Partners, LP*, 613
24  F. App'x 561 (9th Cir. 2015); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323,
25  332 (N.D. Cal. 1985) (applying factors and finding waiver of work product
26  privilege).  Mr. Gray bears the burden to prove that he inadvertently disclosed

27
28

**Plaintiff's Memorandum in Support of its Motion to Compel**
**Additional Discovery**

1   privileged documents.  *See Callan v. Christian Audigier, Inc.*, 263 F.R.D. 564,

2   565 (C.D. Cal. 2009).

3         Here, the first factor—the reasonableness of precautions taken to prevent

4   inadvertent disclosure—weighs heavily in favor of disclosure.  Mr. Gray and

5   Mr. Baranov took no precautions at all to prevent this disclosure.  *Hartford,* 109

6   F.R.D. at 331 (complete failure to take reasonable precautions resulted in

7   waiver).  Instead, Mr. Baranov intentionally produced documents, and chose to

8   make that production without performing a privilege review.  *See id.* ("In the

9   instant case, there was a complete failure to take reasonable precautions."); *see*

10  *also City of Moses Lake v. United States*, 2005 WL 8158742, at *4 (E.D. Wash.

11  Feb. 28, 2005) (waiver where party delivered files to adversary without any

12  designation of privileged information).

13        Mr. Baranov has indicated that a privilege review would have pushed the

14  production past the stipulated deadline.  That is insufficient as a matter of law.

15  *See id.* ("The fact that the City wanted to avoid delay in its document review

16  does not render its disclosure involuntary."); *Hartford*, 109 F.R.D. at 331

17  (rejecting argument that the rushed schedule made it impossible to check the

18  file before turning it over).  And finally, Mr. Baranov's broad assertion of a

19  reservation of rights to recall documents "after a more thorough review and

20  analysis" does not change the analysis.  It is a legal nullity.  *See id.*

21  ("Notwithstanding the apparently voluminous amount of discovery involved,

22  [the producing party] could have taken necessary steps to remove purportedly

23  privileged documents prior to permitting discovery. . . .  The purported

24  reservation . . . was in effect a legal nullity. One cannot produce documents and

25  later assert a privilege which ceases to exist because of the production.").  And,

26  in any event, the reservation was clearly aimed at relevance, not privilege, as

27  explained in Section II.E. above.

28

– 13 –

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1         The remaining factors also weigh in favor of waiver.  Plaintiff, not Mr.

2   Gray, discovered the possibly privileged documents, meaning the second factor

3   of timeliness also points in Plaintiff's direction.  *See Bagley*, 204 F.R.D. at 180.

4   The third factor, the scope of discovery, also supports Plaintiff's arguments.

5   Under this factor, courts examine the number of documents produced and

6   compare that total to the number of privileged documents that were produced.

7   *Id.* at 180-81.   Here, the relevant universe is the 19,497 documents now

8   produced, *id.*, and of those 19,497, review thus far has indicted that 31 may be

9   privileged. *In re Katz Interactive Call Processing Litig*., 2008 WL 11343370,

10  at *4 (C.D. Cal. Feb. 22, 2008) (finding waiver where seven privileged

11  documents were included amongst 130,000 produced pages).  The fourth factor,

12  the extent of the disclosure, also favors waiver, as the documents here were

13  produced in their entirety.  *In re Katz*, 2008 WL 11343370, at *4.  The fifth

14  factor—overriding issues of fairness—likewise leans strongly in Plaintiff's

15  favor.  *Hartford*, 109 F.R.D. at 332.  Mr. Gray and Mr. Baranov have repeatedly

16  abused the discovery process in this action, necessitating three motions to

17  compel from Plaintiff, and they did not even perform a privilege review.  It is

18  not unfair for the Court to conclude that Mr. Gray waived any privilege in these

19  documents. *In re Katz*, 2008 WL 11343370, at *4 (record of dilatory and spotty

20  production rendered it "not unfair" to hold responsible party accountable and

21  order privilege waived).

22        Further, a finding that Mr. Gray has waived any claims of privilege is

23  also warranted because of his intentional decision to not provide a privilege

24  log. *Bess v. Cate*, 2008 WL 5100203, at *2 (E.D. Cal. Nov. 26, 2008), *adopted*,

25  2009 WL 76843 (E.D. Cal. Jan. 9, 2009), *aff'd*, 422 F. App'x 569 (9th Cir.

26  2011) (failure to provide privilege log resulted in waiver); *Chao v. Mazzola,*

27  2006 WL 2319721, at *1 (N.D. Cal. Aug. 10, 2006) (waiver as to documents

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1   where "[t]he lack of a privilege log entry or inadequate entry prevented
2   Defendants and the Court from fairly evaluating the asserted privileges").

3        2.   <u>Mr. Efremidze Waived any Potential Privilege Claims by
4             Providing a Functionally Useless "Privilege Log"</u>

5        As to Mr. Efremidze, although he purported to provide a privilege log, it
6   is functionally useless and amounts to no privilege log at all.  Ex. H.  A single
7   page of that document demonstrates just how inadequate the document is:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ######## | ######## | ######## | ######## | ######## | ######## | Top of Pers On Boardin.pdf | efremidze\Adobe Sign | 1117124 | A2258CB6FF1CE7EA39 |
| | | | ######## | ######## | | 1099-MISC.pdf | efremidze\wkhtmltop | 29600 | 6C769A3C7BEF4B9E40 |
| ######## | ######## | 2/8/2019 | ######## | ######## | ######## | Top of Personal Folder.MSG | efremidze\Outlook M | 77312 | 1C4143092<1515717B |
| | | ######## | ######## | ######## | | ConsentLa.docx | efremidze\Microsoft \ | 19116 | 1229846 4CD2C9E1196 |
| | ######## | ######## | ######## | ######## | | RPD2Respc.docx | efremidze\Microsoft \ | 47475 | 40D39926E225028625 |
| 1/6/2019 | ######## | 1/6/2019 | ######## | ######## | | RFA1Respc.docx | efremidze\Microsoft \ | 43588 | 99927F0D72DFC37297 |
| | ######## | ######## | ######## | ######## | | EfremidzeE.pdf | efremidze\Microsoft ' | 132629 | F2169A3E940E74E8BB |
| | ######## | ######## | ######## | ######## | | RPD2Respc.docx | efremidze\Microsoft \ | 48080 | BC7FFB863C1BE9A1F0 |
| | ######## | ######## | ######## | ######## | | 2016 Efren.pdf | efremidze\Intuit Inc. F | 750423 | D5FAB31993C31106EF |
| | ######## | ######## | ######## | ######## | | 2017-11-0E.pdf | efremidze\PScript5.dll | 66859 | 584679E41121BDC5A5 |
| | ######## | ######## | ######## | ######## | | Binder.pdf.pdf | efremidze\Designer 6. | 10855 | 9D0977002D4021C74A |
| | ######## | ######## | ######## | ######## | | My LLC Op.pdf | efremidze\Adobe Port | 22717 | AED69B4B41215BBA1E |
| | ######## | 2017-Efren.pdf | ######## | ######## | | 2017-Efren.pdf | efremidze\Intuit Inc. F | 400145 | 6CF0B1EEA02F768793 |
| | ######## | ######## | 1/9/2013 | ######## | | pbm rental.pdf | efremidze\PScript5.dll | 92689 | 3401F5EABDA403C64C |
| | ######## | ######## | ######## | ######## | | Vendor Cor.docx | efremidze\Microsoft \ | 238306 | 8F8C10A47DF6288464 |
| | ######## | ######## | ######## | ######## | | SPI1Respor.docx | efremidze\Microsoft \ | 42224 | D4663306A322D632E2 |
| 7/2/2017 | ######## | 3/1/2016 | ######## | ######## | | 2015 Efren.pdf | efremidze\Intuit Inc. F | 665632 | 788BE42C6E3F1510A5 |
| | ######## | ######## | ######## | ######## | | 1099-MISC.pdf | efremidze\wkhtmltop | 29600 | 6C769A3C7BEF4B9E40 |
| | ######## | ######## | ######## | ######## | | SPI1Respor.docx | efremidze\Microsoft \ | 42192 | BE9B1439DBAB2B4DD |
| | ######## | ######## | ######## | ######## | | EfremidzeC.docx | efremidze\Microsoft \ | 32747 | CC5242BC3A9350479E |
| | ######## | ######## | ######## | ######## | | EfremidzeC.pdf | efremidze\Microsoft ' | 192711 | D4D40F128C7D723C52 |
| | ######## | ######## | ######## | ######## | | 18TR4539(.pdf | efremidze\VeryPDF PC | 131637 | 7C3BE8FACF7142925F |
| | ######## | ######## | ######## | ######## | | 2016 Efren.pdf | efremidze\Intuit Inc. F | 750423 | D5FAB31993C31106EF |
| | ######## | ######## | ######## | ######## | | SPI1Respor.pdf | efremidze\Adobe Port | 166428 | 0CAC861F94C19862DC |
| ######## | ######## | 1/9/2013 | ######## | | | pbm rental.pdf | efremidze\PScript5.dll | 92689 | 3401F5EABDA403C64C |
| | ######## | ######## | ######## | ######## | | 1099-MISC.pdf | efremidze\wkhtmltop | 29600 | 6C769A3C7BEF4B9E40 |
| 7/2/2017 | ######## | 3/1/2016 | ######## | ######## | | 2015 Efren.pdf | efremidze\Intuit Inc. F | 665632 | 788BE42C6E3F1510A5 |
| | ######## | ######## | ######## | ######## | | Binder.pdf.pdf | efremidze\Designer 6. | 10855 | 9D0977002D4021C74A |
| | ######## | ######## | ######## | ######## | | RPD2Respc.docx | efremidze\Microsoft \ | 47475 | 40D39926E225028625 |
| 1/6/2019 | ######## | 1/6/2019 | ######## | ######## | | RFA1Respc.docx | efremidze\Microsoft \ | 43588 | 99927F0D72DFC37297 |
| | ######## | ######## | ######## | ######## | | SPI1Respor.docx | efremidze\Microsoft \ | 42192 | BE9B1439DBAB2B4DD |
| | ######## | ######## | ######## | ######## | | My LLC Op.pdf | efremidze\Adobe Port | 22717 | AED69B4B41215BBA1E |
| | ######## | ######## | ######## | ######## | | 2017-11-0E.pdf | efremidze\PScript5.dll | 66859 | 584679E41121BDC5A5 |

Ex. H at 5.  As the Court can see, the document is riddled with hash symbols in place of data.  *See id.*  It contains empty cells, truncated file extensions or folder locations, and does not clearly link entries to documents; it also omits column headers.  *See id.*  Most importantly, the document does not contain a single statement in connection with a single document indicating in any way what the basis is for Mr. Efremidze's claim of privilege.  Thus Plaintiff has no meaningful way to test Mr. Efremidze's claims of privilege, nor does Plaintiff have the time to do so, as discovery closes on March 4.

28

1   In determining whether privilege claims have been waived due to the
2   failure to provide a sufficient privilege log, the Court must weigh:

3   (1) The degree to which the objection or assertion of privilege
4   enables the litigant seeking discovery and the court to evaluate
5   whether each of the withheld documents is privileged;

6   (2) The timeliness of the objection and accompanying
7   information about the withheld documents;

8   (3) The magnitude of the document production; and

9   (4) Other particular circumstances of the litigation that make
10   responding to discovery unusually easy . . . or unusually hard.

11   *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408
12   F.3d 1142, 1146 (9th Cir. 2005).  The factors each weigh in Plaintiff's favor.

13   As to the first *Burlington Northern* factor, Mr. Efremidze makes no
14   assertion of privilege, so Plaintiff plainly cannot evaluate the propriety of
15   withholding the documents.  *Chao*, 2006 WL 2319721, at *1 (waiver as to
16   documents where "[t]he lack of a privilege log entry or inadequate entry
17   prevented Defendants and the Court from fairly evaluating the asserted
18   privileges").

19   The second factor, timeliness, likewise favors Plaintiff.  Although the
20   document was served on the stipulated date, it does not contain the information
21   required of a privilege log under the Federal Rules.  Thus disclosure of the
22   information itself—which has still not been provided—is not timely.

23   The third *Burlington Northern* factor supports waiver too.  Mr.
24   Efremidze appears to be withholding 74 documents (although Plaintiff cannot
25   be certain because the purported log is so unclear).  This factor therefore also
26   weighs in Plaintiff's favor.  *See Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652,
27   662 (D. Idaho 2018), *clarified* 2018 WL 2228889 (D. Idaho May 15, 2018)

28

– 16 –

1  (where magnitude of privileged documents to be produced was not great, factor

2  weighed in favor of party seeking waiver); *see also United States v. Al-Shawaf*,

3  2017 WL 5997440, at *4 (C.D. Cal. Sept. 5, 2017) (parties agreed privileged

4  logs withholding 34 and 50 documents supported party seeking waiver).

5      The fourth and final *Burlington Northern* factor, whether the

6  circumstances of this action make discovery particularly difficult or easy, also

7  supports Plaintiff's position.   There is no indication that discovery was

8  particularly difficult here.   Indeed, Mr. Efremidze's vendor declared that it

9  gained full access to his accounts on February 8, 2019 and performed the

10  stipulated searches with no mention of any difficulties.   Ex. L at 1.   Mr.

11  Efremidze then produced nearly 6,500 documents days before his court-ordered

12  deposition, having managed to avoid producing a single document in this case

13  until being ordered to do so after the initial discovery period closed.   *See*

14  *Addison*, 2016 WL 11530426, at *2 (continuing discovery recalcitrance

15  supported application of waiver).   Mr. Efremidze thus has waived any privilege

16  as to these withheld documents, and they should be produced.[3]

17  **C.   The Court Should Grant Adverse Inferences and/or**
18       **Evidentiary Sanctions.**

19      To remedy the vast amount of time and resources Plaintiff has devoted

20  to merely securing documents from Defendants, to justly admonish Defendants

21  for their continued discovery misconduct, and to deter future misconduct, this

22  Court should impose evidentiary sanctions in Plaintiff's favor.

23      Courts have the power to sanction parties for discovery abuse based on

24  their inherent powers and Rule 37.   *Strategic Partners, Inc. v. Koi Designs,*

25

26  [3]      In the alternative, Plaintiff asks the Court to order Mr. Efremidze to produce, by
        March 1 at 12:00 PM PT, a fulsome privilege log that permits Plaintiff to understand and, if
27      necessary, challenge Mr. Efremidze's assertions of privilege for any improperly withheld
        documents.
28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1  *LLC*, 2018 WL 1989505, at *4 (C.D. Cal. Jan. 23, 2018). The Court may use

2  its broad discretion to fashion an appropriate sanction under its inherent

3  powers. *MGA Entm't, Inc. v. Nat'l Prod. Ltd.*, 2012 WL 4052023, at *2 (C.D.

4  Cal. Sept. 14, 2012).  Under Rule 37, the Court may order sanctions that are

5  "just" when a party fails to comply with a discovery order.  *Strategic,* 2018 WL

6  1989505, at *4.  Among other sanctions, the Court may order an adverse

7  inference or that matters are taken as established.  *USACM Liquidating Tr. v.*

8  *Monaco*, 2010 WL 1849291, at *7 (D. Nev. May 6, 2010) ("Court may direct

9  that matters encompassed by discovery failures shall be taken as established as

10  a penalty for failing to comply with Rules 26(a) or 26(e).").

11        Rule 26(g)(3) also provides for appropriate sanctions when an attorney

12  or party improperly certifies a discovery response, providing that "if a

13  certification violates [Rule 26] without substantial justification, the court, on

14  motion or on its own, must impose an appropriate sanction on the signer, the

15  party on whose behalf the signer was acting or both." Fed. R. Civ. P. 26(g)(3);

16  *see also Estakhrian v. Obenstine*, 2016 WL 6868178, at *13 (C.D. Cal. Feb. 29,

17  2016), *adopted* 2016 WL 6275599 (C.D. Cal. May 17, 2016); *R & R Sails Inc.*

18  *v. Ins. Co. of State of PA*, 251 F.R.D. 520, 524-25 (S.D. Cal. 2008).

19        In this case, Defendants have repeatedly and deliberately delayed their

20  productions, and made misleading or inaccurate statements.  This latest round

21  of incomplete production is just another example in a long line; the historical

22  trail is extensive:

23      • As far back as November 16, 2018, Mr. Baranov asserted that Mr.

24        Gray had conducted a reasonable search for documents. Dkt. 252-2, Exhibit B.  This was not true.

25      • Mr. Baranov agreed to substantially produce documents by

26        December 14, 2018 and to make final production by December

27        21, 2018.  Dkt. No. 252-2 ¶ 6.  He failed to meet either date.

28

– 18 –

- Mr. Baranov committed to complete full productions before his clients' depositions. *See id.* ¶ 4.  He failed to meet this promise.

- This Court ordered that Defendants complete production by January 4.  *See* Dkt. 201.  Mr. Baranov produced documents as late as February 25, 2019—and certain documents still have not been produced.

- Mr. Baranov represented that Mr. Gray did not have very many responsive documents, but Mr. Gray has now produced over 231,000 documents.  *See* Dkt. 252-2 ¶ 4; Decl. ¶ 2.

- Mr. Baranov stated that Mr. Gray's personal Gmail account did not have responsive documents. It did.  Dkt. 252-2, Exhibit H.

- Mr. Baranov stated that Mr. Gray had conducted searches for documents in November.  He had not.  Dkt. 252-2, Exhibits B, D.

Most recently, in response to Plaintiff's last motion to compel, Defendants stipulated to performing searches and producing responsive documents by February 19, 2019, including from Mr. Efremidze's Hotmail account.  Dkt. 258 at 1-2.  In reliance on that stipulation, Plaintiff withdrew its then-pending motion to compel.  Dkt. 259 at 1.  But Defendants missed that deadline, too: on February 26, 2019, Mr. Efremidze produced another 2,635 documents—from his Hotmail account—one week later than the stipulated date and a mere six days before Defendants' depositions.  Decl. ¶ 3; Ex. C.  And Defendants still have not produced Slack messages that they agree are relevant and non-privileged.

These repeated actions and omissions warrant adverse inferences. *Estakhrian v. Obenstine*, 2016 WL 6275599, at \*4 (C.D. Cal. May 17, 2016) (finding adverse inference instruction appropriate where there are "intentional or grossly negligent acts that hinder discovery," such as "purposeful sluggishness" in producing discovery); *see Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 2005 WL 643462, at \*2 (D. Kan. Mar. 16, 2005) (imposing adverse inference instruction after repeated discovery abuses,

– 19 –

1   including production of documents months after representations that no such
2   documents existed).

3          An adverse inference is also justified under Rule 26(g)(3) based on
4   Baranov's past certification of false and misleading discovery responses. *See*
5   *Estakhrian*, 2016 WL 6868178, at *13; *R & R Sails Inc.*, 251 F.R.D. at 524-25.
6   For example, Plaintiff's RFP No. 38 requested, *inter alia*, "[a]ll documents . . .
7   to, from, between or among Defendants relating to any projects worked on by
8   Mr. Gray, [Lisa] Dusseault, and Mr. Efremidze while employed by StubHub."
9   Dkt. 252-2, Exhibit A.   Mr. Gray responded that he would "produce all
10  responsive documents in his custody, possession and control." Dkt. 252-9,
11  Exhibit G at 31.  Mr. Efremidze responded that he did not have any responsive
12  documents and withheld none pursuant to an objection.  Dkt. 252-12 at 33,
13  Exhibit J.  Both responses now appear to have been false at the time they were
14  made.  Mr. Gray did not produce all responsive documents, and Mr. Efremidze
15  had responsive documents all along.

16         Plaintiff therefore requests that the Court order adverse inferences—or
17  that it is taken as established—that:

18      • Mr. Efremidze and Mr. Gray formed a conspiracy to violate the
19        Defend Trade Secrets Act and the Computer Fraud and Abuse Act;
20      • Mr. Efremidze and Mr. Gray acquired, used, and disclosed
21        Calaborate's trade secrets, including the Klutch code, without
22        Calaborate's authorization, in violation of the Defend Trade
          Secrets Act;
23      • Mr. Efremidze's and Mr. Gray's conduct caused monetary harm to
24        Plaintiff; and
25      • Mr. Efremidze and Mr. Gray violated the Computer Fraud and
          Abuse Act.

26
27
28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

### D.   Defendants and Their Counsel Should Bear the Costs of Plaintiff's Motion

The Court should also order Defendants (and their counsel) to pay Plaintiff's expenses for bringing this Motion—Plaintiff's *third* motion to compel Defendants to meet their discovery obligations.  When a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay to the moving party the "reasonable expenses" incurred in making the motion, including reasonable attorney's fees,[4] unless the opposing party's position was "substantially justified" or other circumstances would make such an award unjust.  Fed. R. Civ. P. 37(a)(5); *see also* Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation").  A court may impose costs on counsel.  *See Evans v. Alliedbarton Security Servs., LLP*, 2009 WL 5218010, at *1 (N.D. Cal. Dec. 31, 2009).

As discussed above, Mr. Baranov and Defendants' conduct necessitated the present Motion, and their repeated failures are indicative of Defendants' and Mr. Baranov's willingness to flout an agreed-upon Stipulation, the Federal Rules, and this Court's orders.  They should bear the costs of this Motion.  *See, e.g., Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) ("Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced.").

---

[4]    If the Court rules that costs and fees are appropriate, Plaintiff will provide documentation sufficient to permit the Court to determine the reasonableness of hours expended and rates charged. *Tr. of Operating Engineers Pension Tr. v. White's Excavating, Inc.*, 2009 WL 10675986, at *1 (C.D. Cal. Feb. 27, 2009).

– 21 –

1  **IV.    CONCLUSION**

2          For these reasons, Plaintiff requests the Court: (1) grant its Motion;

3  (2) compel reasonable search and production from Defendants as outlined

4  above by 12:00 PM PT on Friday, March 1; (3) declare that Mr. Gray waived

5  any claims of privilege as to all documents that he produced; (4) declare that

6  Mr. Efremidze waived any claims of privilege as to any documents withheld,

7  and compel the production of those documents by 12:00 PM PT on Friday,

8  March 1; (5) order evidentiary sanctions against Mr. Gray and Mr. Efremidze

9  in the form outlined above; (6) order Defendants and Mr. Baranov to pay

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel Additional Discovery**

1  Plaintiff's expenses in relation to bringing this Motion; and (7) order such other

2  relief as the Court deems appropriate.[5]

3

4

5

6

7

8

9

10

11  [5]     On February 28 at 10:22 p.m., Mr. Baranov, on behalf of Mr. Efremidze, purported

12  to serve a "supplemental privilege log" after Plaintiff confirmed that it would be filing the

13  instant motion. Decl. ¶ 5; Ex. N. The document provided by Baranov, in addition to being significantly untimely under the Stipulation, is not supplemental, nor can it accurately be described as a privilege log. Instead, it is a belated and insufficient attempt to remedy the

14  errors with Mr. Efremdize's original purported privilege log and remains inadequate in key

15  respects. First, the "supplemental privilege log" indicates that documents have been withheld not for privilege, but on the independent bases of "privacy" and "relevance." No

16  valid privilege is asserted. These purported bases are problematic because "privacy" by itself is not a bar to discovery, and is not a recognized privilege. See, e.g., *Allen v. Wood-*

17  *ford*, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30, 2007). In addition, Plaintiff has not requested irrelevant documents, and made that clear to Mr. Baranov. Decl. ¶ 9. What this

18  confirms is that Mr. Baranov has not conducted any review, let alone a privilege review, and instead relied on his vendor to make these determinations. See *Bank Brussels Lambert*

19  *v. Credit Lyonnais* (Suisse) S.A., 160 F.R.D. 437, 445 (S.D.N.Y.1995) (suggesting that only attorneys should perform any substantive aspect of a privilege review); see also Ex-

20  hibit J (indicating that Mr. Baranov needed to check with his vendor to see if any documents were withheld on behalf of Mr. Gray). The purported "supplemental privilege log"

21  also fails to resolve numerous issues with Mr. Efremdize's original purported privilege log.

22  For example, it does not indicate whether any copyees were included on emails, preventing Plaintiff from assessing whether any purported privileges may have been waived. More-

23  over, many of the privilege "descriptions" in the document are plainly lacking in merit – for example, Mr. Efremdize purports to assert privilege over a deposition notice, yet somehow

24  fails to object to production of that document on grounds of relevance despite asserting that purported privilege elsewhere. Ex. N. Indeed, these descriptions call into question

25  whether the document was even prepared by Mr. Baranov himself, or whether it was in-

26  stead prepared by his document vendor.

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**

1

2     Dated: February 27, 2019                 Respectfully submitted,

3                                              /s/ *Douglas S. Curran*

4                                              **Pierce Bainbridge Beck Price &**
                                               **Hecht LLP**
5                                              John M. Pierce (SBN 250443)
6                                              jpierce@piercebainbridge.com
                                               600 Wilshire Blvd., Suite 500
7                                              Los Angeles, CA 90017
8                                              (213) 262-9333

9                                              Douglas S. Curran (*pro hac vice*)
10                                             dcurran@piercebainbridge.com
                                               Conor B. McDonough (*pro hac vice*)
11                                             cmcdonough@piercebainbridge.com
12                                             Adam C. Ludemann (*pro hac vice*)
                                               aludemann@piercebainbridge.com
13                                             20 West 23rd St., 5th Floor
14                                             New York, NY 10010
                                               (212) 484-9866
15

16                                             *Counsel for Plaintiff Calendar*
                                               *Research LLC*
17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Memorandum in Support of its Motion to Compel
Additional Discovery**